**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LIBORIO ALCAUTER,**

    **Petitioner,**                                        Civ. No. 2:17-cv-0028
                                                       Crim. No. 2:14-cr-200(3)
    **v.**                                                             **CHIEF JUDGE SARGUS**
                                                       **Magistrate Judge King**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this *Motion to Vacate under 28 U.S.C. § 2255*. This matter is before the Court on the Motion to Vacate (Doc. 873) and memorandum in support (Doc. 881), the *Government's Answer to Petitioner's 28 U.S.C. § 2255 Motion* (Doc. 904)(filed under seal), Petitioner's *Reply to Government's Response to Motion under Title 28 U.S.C. Section 2255* (Doc. 928), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Facts and Procedural History

On November 24, 2015, Petitioner pleaded guilty to two counts of willful failure to collect or pay over tax in violation of 26 U.S.C. § 7202, and to one count of employment of unauthorized aliens in violation of 8 U.S.C. § 1324a(a)(1)(A), (a)(2), (f)(1), and 18 U.S.C. § 2. On January 7, 2016, the Court imposed an aggregate term of 66 months' imprisonment, to be followed by three years' supervised release, and ordered restitution in the amount of $1,127,233.00. *Judgment* (Doc. 709). Petitioner now asserts that he was denied the effective assistance of counsel, because his attorneys advised him to enter a guilty plea, failed to explain the consequences of a guilty plea, and failed to advise him that his sentence exceeded the

statutory maximum (claim one); because his attorneys failed to object to the calculation of his criminal history score (claim two); because his counsel failed to argue that his recommended guideline sentence significantly overstated his culpability and role in the offense and that he therefore qualified for a reduced sentence (claim three); and because his attorneys failed to present mitigating factors at sentencing (claim four). Respondent contends that these claims fail to warrant relief.

## Standard of Review

In order to obtain relief under 28 U.S.C. § 2255, a petitioner must establish the denial of a substantive right or a defect in the trial court proceedings that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or when the trial court lacked jurisdiction, when the sentence exceeded the maximum sentence allowed by law, or when the judgment or conviction is "otherwise subject to collateral attack." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). In the absence of constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428–429 (1962)); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006). However, "'[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances.'" *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (quoting *United States v. Brown,* 62 F.3d 1418 (6th Cir. 1995) (unpublished)). Further, non-constitutional claims not raised at trial or on direct appeal are waived on collateral review except where the errors amount to something

akin to a denial of due process. Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained on a motion to vacate under § 2255 unless the petitioner shows: (1) cause and actual prejudice sufficient to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the crime. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (internal citations omitted).

> A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Abrahamson*, 507 U.S. at 637). Therefore, a court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

*United States v. Noble,* No. 1:14-cr-135, 2017 WL 626130, at *3 (N.D. Ohio Feb. 15, 2017).

**Ineffective Assistance of Counsel**

Petitioner contends that he was denied the effective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient, or that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient

3

performance prejudiced the petitioner. *Id*. at 687. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id*.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland*, 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. Therefore, a petitioner must also establish prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id*. at 692.

In order to establish prejudice, a petitioner must demonstrate that a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of *Strickland* in order to demonstrate the ineffective assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

Petitioner was convicted on his guilty plea. Because a criminal defendant waives numerous constitutional rights when he pleads guilty, the guilty plea must be entered knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, a court must look at the totality of the circumstances surrounding the

plea. *Id*. A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). Further, a criminal defendant cannot successfully challenge the voluntariness of his plea merely on the basis that he was motivated to plead guilty. *Brady v. United States*, 397 U.S. 742, 750 (1970).

However, a petitioner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). *Strickland's* two part test applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks*, 852 F.2d at 884. In order to obtain relief on that basis, however, a petitioner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill,* 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884. Petitioner has failed to meet this standard here.

As noted, Petitioner claims that his attorneys failed to advise him of the consequences of pleading guilty and failed to object to the Court's imposition of a sentence that exceeded the statutory maximum. Additionally, Petitioner asserts that defense counsel failed to conduct adequate investigation of the law and applicable sentencing guidelines, and failed to act as an advocate during the plea and sentencing processes. *Movant's Reply to Government's Response to Motion under Title 28 U.S.C. Section 2255* (Doc. 928, PageID# 2885). Petitioner states that

5

he did not understand the terms of his *Plea Agreement*, but that he responded affirmatively to all of the Court's questions at the guilty plea hearing upon the instruction of his counsel. *Id.* (PageID# 2886). Petitioner states that his attorney told him that, if he did not plead guilty and agree to a sentence of 66 months, he would be facing ten years in prison. Petitioner asserts that his attorney performed inadequately during the sentencing proceedings, because his counsel failed to argue for a downward departure in Petitioner's criminal history score, failed to argue that Petitioner's recommended sentence under the advisory United States Sentencing Guidelines significantly overstated his culpability and role in the offense, and failed to investigate or present mitigating factors as grounds for a reduced sentence. *Id*. (PageID# 2885).

In response, Respondent has submitted the *Affidavit of Terry K. Sherman* (filed under seal), which indicates in relevant part as follows:

> I was retained as co-counsel to represent Liborio Alcauter when he was initially indicted, along with co-defendants, prior to September 23, 2014, in a multi-count drug conspiracy, gun and money laundering case. Mr. Alcauter was facing a possible sentence of a minimum of ten years to life in prison. On April 2, 2015, the Grand Jury returned a fifteen count superseding Indictment, charging him with additional drug conspiracy offenses.
>
> During the investigation of this case, law enforcement executed a search warrant on each of the ten La Micoacana Mexican Restaurants that Mr. Alcauter either owned or was responsible for. As a consequence of those search warrants, multiple documents, memoranda, and receipts were retrieved. Many of those recovered documents provided irrefutable evidence that Mr. Alcauter was not reporting earned income, failing to pay federal employment tax, hiring undocumented works and paying them in cash. As a consequence of this further evidence, the government planned to file an additional Superseding Indictment alleging tax evasion and money laundering charges.
>
> Bertha Duran was hired by Mr. Alcauter as primary counsel. This case was pending for almost two years. Ms. Duran and I spent hundreds of hours working on this case. We collectively and individually reviewed the mountains of paper evidence, scrutinized

and investigated all alleged cooperative individuals, researched and evaluated all potential defenses. Ms. Duran would meet with Mr. Alcauter several times a week. I would meet with him at least once a week. Mr. Alcauter was completely aware of every aspect of the government's case. He personally reviewed, often in my presence, every bit of discovery.

The plea negotiations in this case extended over months, with Mr. Alcauter actively participating. In short, there is not one item, not one piece of evidence, not one portion of negotiations that Mr. Alcauter was not aware of, actively participated in, and completely understood.

The Plea Agreement in this case called for a dismissal of the drug Indictment and a plea of guilty to the Bill of Information involving tax and employment of undocumented workers offenses. This Plea Agreement is unusual in two respects. First, it is a binding Plea Agreement pursuant to 18 U.S.C. § 3553, § 3553(e), and Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. This Plea Agreement called for a sentence of sixty-six (66) months of imprisonment. Mr. Alcauter, through counsel, was an active participant in the negotiations, and ultimately agreed to the sentence of sixty-six (66) months of imprisonment. He unequivocally knew and approved the binding agreement of the parties, sixty-six (66) months of imprisonment would be his sentence. In return for this plea of guilty to the Bill of Information, the government would dismiss the multi-count drug and money laundering case against him. The second unusual aspect of Mr. Alcauter's Plea Agreement was that the government promised it would not file any further criminal charges under title 21 and/or related title 18 violations based upon evidence developed in Case #2:14CR200(3) as to the original or Superseding Indictment. This promise is contained in Paragraph 7 of the Plea Agreement.

Why was this important? This was important because there was a real concern that if Mr. Alcauter pled guilty and was incarcerated on the federal tax violations, individuals who were either incarcerated or under investigation would then come forward and attempt to make a deal by providing the government with additional evidence on drug deals and money laundering, which could expose Mr. Alcauter to additional prosecution. Paragraph 7 of the Plea Agreement protected Mr. Alcauter from this possibility.

On November 24, 2014, Mr. Alcauter entered a plea of guilty to Counts 1, 2 and 3 of the Superseding Information, pursuant to the Plea Agreement, under Rule 11(c)(1)(C). Prior to the Court

> accepting the plea, Mr. Alcauter expressed his personal satisfaction with the Plea Agreement, and the understanding that if the Court were to accept the binding Plea Agreement, he would receive sixty-six (66) months of incarceration. Moreover, Mr. Alcauter repeatedly expressed to both Ms. Duran and the undersigned that he was more than satisfied with his attorneys' work on his case.
>
> Mr. Alcauter now complains about a sentence that he knew he was going to receive, approved of, and actually helped negotiate. The issues he now raises with respect to the guidelines, downward departure and variances are irrelevant because he agreed in advance to his change of plea to a sentence of sixty-six months, and in return the government dismissed the drug and gun Indictment, and could not prosecute him on any matters that were originally encompassed in the original and Superseding Indictments.

*Affidavit of Terry K. Sherman* (filed under seal) (Doc. 904-1, PageID# 2727-29).

The record reflects that, on September 18, 2014, Petitioner was charged by way of *Indictment* on one count of conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin, and five kilograms or more of cocaine. (Doc. 10). Petitioner faced a prison term on that charge of ten years to life. 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i), (ii), and § 846. On April 2, 2015, a *Superseding Indictment* was filed charging Petitioner, and 21 co-defendants, with additional charges, including conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin, and five kilograms or more of cocaine; conspiracy to distribute and to possess with the intent to distribute over 100 kilograms of marijuana; hiring unauthorized aliens for employment; and conspiracy to allow illegal aliens to possess firearms. *Superseding Indictment* (Doc. 398). On November 24, 2015, the government filed a *Superseding Information* charging Petitioner with two counts of willful failure to collect and pay over tax in violation of 26 U.S.C. § 7202, and one count of employment of unauthorized aliens in violation of 8 U.S.C. § 1324a(a)(1)(A), (a)(2), (f)(1), and 18 U.S.C. § 2. *Superseding Information* (Doc. 658). On that same date, Petitioner signed a *Waiver of Indictment* (Doc. 661), and a *Plea*

*Agreement*, executed pursuant to the provisions of Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, by which Petitioner agreed to plead guilty to the charges in the *Superseding Information* and to the imposition of a sentence of 66 months' incarceration, a three year term of supervised release, and an order of restitution in the amount of more than $1.127 million. *Plea Agreement* (Doc. 659, PageID# 1701). Under the terms of the *Plea Agreement*, the government dismissed all other charges against Petitioner, including those contained in the *Superseding Indictment*. *Id.* (PageID# 1703). Petitioner acknowledge that the charging statutes authorized a maximum term of five years' imprisonment on the charges in Counts 1 and 2, and six months' imprisonment on the charge in Count 3. *Id*. (PageID# 1700). The parties further agreed that Petitioner would obtain a reduction in his recommended guideline sentence for his acceptance of responsibility and for timely notifying the authorities of his intention to plead guilty. *Id.* (PageID# 1704).

At his November 24, 2015, change of plea hearing, Petitioner testified under penalty of perjury. *Guilty Plea Transcript* (Doc. 937, PageID# 3008). He denied that he was under the influence of drugs, medicine or alcohol, and stated that he had received a copy of the charges against him. *Id.* (PageID# 3009). He understood and waived his right to indictment by the grand jury. *Id.* (PageID# 3009-3011). He pleaded guilty to the charges in the Superseding Information. *Id.* (PageID# 3011). Petitioner stated that he had told his attorneys everything he knew concerning the case against him and believed that they had all facts needed to understand and be able to provide proper legal advice. He was satisfied with the advice and representation of defense counsel. *Id.* (PageID# 3012). The Court advised Petitioner of the elements of the offenses charged; Petitioner indicated that he understood. *Id.* (PageID# 3013-14). The Court also advised Petitioner that he faced up to five years on Counts 1 and 2, or a total of ten years.

Petitioner indicated that he understood. *Id.* (PageID# 3013). He understood that he faced a maximum term of six months on Count 3. *Id.* (PageID# 3014). The Court advised Petitioner that he would lose his right to vote, to hold public office, to serve on a jury or to possess a firearm or dangerous device of any kind, and that if he was not a citizen, he could be deported, denied citizenship, or denied readmission to the United States as a result of his guilty plea. Petitioner indicated that he understood those consequences. *Id.* (PageID# 3015-16). He stated that he had discussed with his attorneys the application of the sentencing guidelines in his case. *Id.* (PageID# 3016).

> COURT: In your case, my assumption is that you and your lawyers have discussed how the sentencing guidelines would work, and you have come up with an agreed sentence based on that analysis. Would that be correct?
>
> DEFENDANT: Yes, it is.

*Id.* (PageID# 3017). The Court advised Petitioner of all of the rights that he was waiving by entry of his guilty plea. Petitioner at all times indicated that he understood. *Id.* (PageID# 3017-18). The attorney for the Government summarized the terms of Petitioner's *Plea Agreement*. *Id.* (PageID# 3018-22). Petitioner stated that he understood and agreed with those terms. *Id.* (PageID# 3022). He denied that any other promises had been made to him. *Id*.

> COURT: [Y]ou understand that [] – you and the government have agreed that you should receive a 66-month prison term and restitution order in the amount of $1.27 million?
>
> DEFENDANT: Yes.

*Id.* (PageID# 3023). The prosecutor summarized the facts of the case as follows:

> The defendant Liborio Alcauter served as the president of La Michoacana Mexican Market, LLC, La Michoacana Market II, LLC, Leo's Mexican Market, LLC, La Michoacana Market #4, LLC, and La Micoacana Market, LLC, quotations, the Markets, all

of which operate in the Columbus and Dayton, Ohio, areas, within the Southern District of Ohio.

From at least in or about 2009, and continuing until in or about September, 2014, Defendant Liborio Alcauter exercised control over every aspect of the markets' business affairs, including all payments by the company. Specifically, and as relevant herein, the defendant decided which employees were paid through payroll to include the withholding and paying over of federal employment taxes and which employees were paid in cash, with no federal employment taxes collected or paid over to the Internal Revenue Service. Defendant Liborio Alcauter generally paid employees in cash that did not have legal status in the United States.

The Markets were required to make deposits of the federal employment taxes to the IRS for all employees on a periodic basis. As president, Defendant Liborio Alcauter was the responsible person, that is, he had the corporate responsibility to collect, truthfully account for and pay over the Markets' payroll taxes. Nevertheless, throughout the calendar years 2009 through 2014, the Markets, at Defendant Liborio Alcauter's direction, failed to collect, truthfully account for and pay over federal employment taxes, which were due to the IRS, for the employees paid in cash.

From in or about December 31, 2009, through in or about September 30, 2014, Defendant Liborio Alcauter, being the responsible person with respect to federal employment taxes for La Micoacana Market, La Michoacana Mexican Market II, LLC, and La Michoacana Market #4, LLC, and thereby being required to collect, account for and pay over to the IRS the federal withholding taxes of its employees did willfully fail to collect and pay over to the IRS approximately $1,127,233.33 in federal withholding taxes for those employees who were paid in cash.

For an example, on October 31, 2014, which was the reporting due date for the third quarter of 2014, Defendant Liborio Alcauter did willfully fail to collect and pay over to the IRS approximately $31,917.11 in federal employment taxes for those employees paid in cash by La Michoacana Mexican Market II, LLC.

Additionally, on or about July 31, 2011, which was the reporting due date for the second quarter of 2011, Defendant Liborio Alcauter did willfully fail to collect and pay over to the IRS approximately $61,352.95 in federal employment taxes for those employees paid in cash by La Michoacana Mexican Market #4, LLC.

> In total, $1,127,233.33 is owed in restitution to the IRS, which Defendant Liborio Alcauter has agreed to pay as outlined in the plea agreement.
>
> During this same time period, from in or about October, 2009, through on or about September 30, 2014, Defendant Liborio Alcauter did knowingly and intentionally hire for employment and continued to employ aliens who were not lawfully admitted for permanent residence or authorized to work in the United States. Defendant Liborio Alcauter as president of the Markets was responsible for both hiring and paying employees as noted above. In that capacity he engaged in a pattern and practice of employing individuals who did not have legal status in the United States and paying those same employees in cash with no federal employment taxes collected or paid over to the IRS.
>
> These events occurred in the Southern Judicial District of Ohio.

*Id.* (PageID# 3024-26). Petitioner agreed with those facts. *Id.* (PageID# 3026-27). He again admitted his guilt to the offenses charged in the *Superseding Information*. *Id.*

Moreover, the *Presentence Investigation Report* indicates that

> [d]uring the course of a related investigation, agents learned of the defendant's failure to report wages. On September 23, 2014, law enforcement agencies executed search warrants at each store. Agents seized business records from La Michoacana Mexican Market II, LLC and La Michoacana Mexican Market #4, LLC, substantiating the defendant's fraudulent activity. According to the agent, records documented the cash payments to the employees. Additionally, witnesses were interviewed and provided information consistent with the findings.

*Presentence Investigation Report*, ¶ 27.

At the January 7, 2016, sentencing hearing, Petitioner acknowledged that he had received a copy of the Presentence Investigation Report and addendum, had reviewed it, and had discussed it with his attorneys. *Sentencing Transcript* (Doc. 850, PageID# 2393-94). He told the Court that he recognized that he deserved to be punished in accordance with the *Plea Agreement*,

but explained that he had provided jobs for Mexicans who were living in poverty and desperation. *Id.* (PageID# 2395-96).

> I recognize that my criminal conduct is serious and should be so viewed. I also recognize I deserve punishment in accordance with the plea agreement. I will be going to prison. I would like to explain why I did what I did. But I don't want – I do not want what I say to be viewed as an excuse because there is no excuse.
>
> My stores have the ability to employ as many as 200 people. In order for 200 jobs were available. The stores, as you know, are Mexican markets; and the clients, our customer, are mostly Hispanics or individuals who spoke Spanish. I also am keenly aware of what life is like in Mexico. 27.4 million Mexicans lack houses and sufficient food. There is no health care. There is no social security. There is no public assistance. People in Mexico who live in poverty are on their own without any government assistance whatsoever. Those who leave their homes and families and come to the United States come for only one reason. That is to find work so they can send money back to their families in Mexico who desperately are in need of help.
>
> Recognizing the poverty and desperation of many Mexican millions, I was in a position to provide jobs for them. I knew no matter how much is life, there, on the commence work, their work, send months of their earned back to their families in Mexico [sic]. I hired many Mexican worker. They are people who could not be regularly employed with the -- in the United States and did not receive payroll checks. So I pay them in cash knowing I was not -- there was still taxes and also knowing that they are workers who are fine, decent people whose sole purpose in being in the United States was to provide money to support their families in Mexico.
>
> I know I did wrong. I know. I am willing and accept it and apologize for what I have done.

*Id.* (PageID# 2395-96). Petitioner made a similar statement to the Probation Officer, indicating that he committed the charged offenses because he had been in a position to provide work for Mexicans in need of help and living in poverty:

> I knew no matter how much or little these undocumented workers would earn, they would send most of their earnings back to their families in Mexico.

13

> I hired many undocumented workers. They are people who could not be employed regularly within the United States and could not receive payroll checks. I paid them in cash, knowing I was not deducting taxes, and also knowing that these workers, who are fine, decent people, who[se] sole purpose in being in the United States was to provide money to support their families in Mexico.
>
> Many of the people I employed were family members that were undocumented. They were my siblings, cousins, nephews, and nieces. I did it to help my family members so that they could survive and provide for their families.

*Presentence Investigation Report*, ¶ 35. The *Presentence Investigation Report* also noted – as one factor that mcould warrant a departure from the Sentencing Guidelines – that Petitioner's criminal history score, although calculated as category II, was probably more suitable to category I. *Id*. at ¶ 114. Petitioner's recommended guideline sentence was 27 to 33 months' imprisonment; however, the probation officer recommended an aggregate term of 66 months' imprisonment.

Thus, the record reflects substantial evidence of Petitioner's guilt and the government would have been able to prove the charges against Petitioner. Under these circumstances, defense counsel would not have acted in a constitutionally ineffective manner by advising Petitioner to enter a guilty plea. As a result of his guilty plea, the government dismissed the charges against Petitioner in the *Superseding Indictment*, and agreed not to file any additional charges against him, thereby substantially reducing Petitioner's potential exposure. Petitioner obtained a three level reduction in his recommended guideline sentence for his acceptance of responsibility and timely notifying the authorities of his intention to plead guilty, and limited his sentence to a term of 66 months. This sentence, despite Petitioner's argument to the contrary, did not exceed the statutory maximum term for the offenses charged. Defense counsel did not act unreasonably by advising Petitioner that he faced up to ten years in prison, or more, if he

proceeded to trial on the charges against him in the *Superseding Indictment*, in addition to the charges at issue here. Moreover, the record does not support Petitioner's claim that his attorneys failed to investigate the case. Petitioner does not indicate the manner in which any further investigation would have assisted him. Petitioner has failed to establish that, but for the ineffective performance of counsel, he would not have pleaded guilty but would have proceeded to trial. Additionally, Petitioner presented his statement in mitigation to the Court at sentencing and through the *Presentence Investigation Report*. Petitioner does not identify, and the record does not reflect, any additional mitigating factors that would have resulted in a reduced sentence. As noted *supra,* the *Presentence Investigation Report* indicated that Petitioner's prior criminal history score may have over-stated his criminal history. However, Petitioner's *Plea Agreement* presumably included some consideration of the dismissal of other criminal charges pending against Petitioner in the *Superseding Indictment*. Further, counsel did not act unreasonably in failing to argue for a downward departure at sentencing, because the parties had already agreed to an appropriate sentence pursuant to the terms of Petitioner's *Plea Agreement.* Although Petitioner now alleges that he did not understand the consequences of his guilty plea or the terms of his *Plea Agreement*, these allegations are simply not worthy of credit in view of Petitioner's signed *Plea Agreement* and his statements to the contrary made at his change of plea proceeding and at his sentencing hearing.

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea proceeding], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison,* 431 U.S. 63, 73–75 (1977).

In short, Petitioner has failed to establish the denial of the effective assistance of counsel.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

    *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

December 18, 2017